IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LAMAR COMER,                           )
                                       )
            Petitioner,                )
                                       )
    v.                                 ) Civ. No. 11-1013-SLR
                                       )
DAVID PIERCE, Warden,                  )
and ATTORNEY GENERAL OF THE            )
STATE OF DELAWARE,                     )
                                       )
                                       )
            Respondents.               )

---

Lamar Comer. Pro se petitioner.

Elizabeth R. McFarlan. Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

---

**MEMORANDUM OPINION**

November ㄵ , 2014
Wilmington, Delaware

## I. INTRODUCTION

Petitioner Lamar Comer ("petitioner") is a Delaware inmate in custody at the James T. Vaughn Correctional Center in Smyrna, Delaware. Presently before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 3) For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

On October 25, 2004, at approximately 7:00 p.m., Bakeem Mitchell was shot and killed by a stray bullet near the corner of Fifth and Madison Streets in Wilmington, Delaware. Ballistic evidence introduced at trial indicated that Mitchell was an innocent bystander killed by a ricocheted bullet in a shootout involving petitioner, Derrick Williams, Clifford Reeves, and Frank Johnson.

Although the facts and testimony were in dispute, it appears that, at the moment Mitchell was shot, Johnson was driving his vehicle the wrong way on Fifth Street in Wilmington, through its intersection with Madison Street. Some trial evidence indicated that petitioner and his codefendants, Williams and Reeves, began shooting at Johnson near Sixth and Monroe Streets, and that they continued to fire at Johnson from the corner of Fifth and Monroe as he drove his vehicle up Fifth Street. Supporting this scenario, ten 9 mm bullet casings were recovered from the intersection of Fifth and Monroe. One witness indicated that petitioner, on foot, had pursued Johnson's vehicle

---

[1]The facts were taken directly from the Delaware Supreme Court's opinion on direct appeal, *Comer v. State*, 977 A.2d 334, 336-7 (Del. 2009).

up Fifth Street, continuing to fire his weapon. Other trial evidence indicated that Johnson may have either returned fire towards petitioner, Williams, and Reeves, or executed a "drive-by" shooting of Mitchell.

Petitioner, Williams, and Reeves were each indicted on murder in the first degree (felony murder of Mitchell), attempted murder in the first degree (Johnson), conspiracy in the first degree (Johnson), reckless endangering in the first degree, possession of a firearm/ammunition by a person prohibited ("PFPP"), and three counts of possession of a firearm during the commission of a felony ("PFDCF"). At trial, the State argued that petitioner and his co-conspirators had recklessly engaged in a gunfight with Johnson. The State's theory was that, although all three co-defendants initially ran after Johnson's car and fired at it, petitioner was the only person still firing on Fifth Street and, thus, was the only person capable of striking Mitchell. The State also presented evidence that no gunfire came from Johnson's car. The State suggested that the only person who could have killed Mitchell was petitioner.

In contrast, [petitioner's] defense was that the two incidents were separate criminal actions, and that he, Williams, and Reeves happened to be firing at Johnson at the same time Johnson was attempting to murder Mitchell. [Petitioner] argued that the testimony was too inconsistent to harmonize, and that the jury could not possibly determine who was shooting at the time Mitchell was killed. [Petitioner] also argued that Johnson was the only person firing a gun, and since Johnson's testimony was so inconsistent, Johnson could not be believed.[2] [Petitioner] contended that there was

----

[2]Johnson provided a recorded statement to police concerning the events of Mitchell's death. He explained that he was driving on Monroe Street and, as he crossed Sixth Street, he looked in his rearview mirror and observed [petitioner], Williams, and Reeves

2

no physical evidence tying him to the crime scene and never admitted that he was even

near the crime scene during the shooting. Over the objection of [petitioner], the trial

court instructed the jury as follows on the element of causation:

> A Defendant causes the death of another person when the Defendant's
> voluntary act brings about that person's death, which would not have
> happened but for Defendant's act. **If it is demonstrated beyond a**
> **reasonable doubt that a Defendant recklessly fired shots along with others**
> **and a person's death was caused by one of those shots, or if it is proved**
> **beyond a reasonable doubt that [a] Defendant recklessly participated in**
> **an exchange of gunfire that caused a person's death, then the State need**
> **not prove that a particular shot, fired by a particular person caused the**
> **death.** The State, however, must prove beyond a reasonable doubt that a
> Defendant recklessly participated actively in the fatal shooting and that the
> death did not occur independently from Defendant's conduct, before it can
> be said that he was a legal cause of the death.

*Comer,* 977 A.2d at 337 (emphasis added).

The jury subsequently found petitioner guilty of: first degree felony murder of

Mitchell (hereinafter referred to as "felony murder"); attempted first degree assault of

Johnson (lesser included offense of attempted first degree murder of Johnson);

conspiracy in the first degree (Johnson); reckless endangering in the first degree; and

three counts of possession of a firearm during the commission of a felony ("PFDCF").

*Comer,* 977 A.2d at 337. Petitioner was not found guilty of the PFPP charge. The jury

acquitted Reeves and Williams of all charges except the lesser-included offense of

second degree conspiracy. *Id.*

---

draw their weapons and fire at him. Attempting to flee, he then "shot up the one way up
Fifth," "'[j]ust keep [sic] shooting past the corner store [crossing Madison]," and made a
left on Jefferson Street. Johnson said that he then parked his car on Jefferson near
Eighth Street, because the tires were shot out. However, when police located
Johnson's vehicle, it had no rearview minor, no bullet holes, and no flat tires.

On direct appeal, the Delaware Supreme Court reversed petitioner's first degree murder conviction due to a faulty jury instruction given on that charge. *See Comer*, 977 A.2d at 342-3. The case was remanded to the Superior Court for a new trial on the felony murder charge or, in the alternative, the imposition of a conviction of manslaughter as a lesser-included offense. *Id.* at 344. The State elected the latter alternative. *See Comer v. State*, 23 A.3d 864 (Table), 2011 WL 2361673, at *1 (Del. June 13, 2011). Judgment was entered for manslaughter, and petitioner was resentenced. *Id.*

On February 3, 2010, petitioner filed a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61. *See State v. Comer*, 2010 WL 3511024 (Del. Super. Ct. Aug. 31, 2010). The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *See Comer*, 2011 WL 2361673, at *1.

Petitioner timely filed a § 2254 application in this court. (D.I. 1) The State filed an answer in opposition, asserting that the application should be denied in its entirety. (D.I. 15)

## III.  GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure

4

that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry,* 513 U.S. 364, 365 (1995); *Castille v. Peoples,* 489 U.S. 346, 351 (1989); *Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman,* 501 U.S. at 750; *Harris v. Reed,* 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded

counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - -whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable

6

application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); see also Williams v. Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. Thomas v. Horn, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 526 U.S. 86, 131 S.Ct. 770, 784-85 (2011).

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000); Miller-El v. Cockrell, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner's application presents the following seven ineffective assistance of counsel claims, alleging that counsel failed to: (1) challenge the felony murder charge in the indictment as being the wrong degree of homicide; (2) move for judgment of acquittal on the attempted first degree murder charge/conviction for lesser included offense of attempted first degree assault; (3) object to the trial court's supplemental jury instruction regarding the attempted first degree assault charge; (4) challenge the sufficiency of the evidence for the felony murder conviction; (5) conduct a direct examination of witness Chaquan McCoy; (6) challenge the trial court's denial of petitioner's motion for judgment of acquittal on the felony murder conviction; and (7) challenge the sufficiency of the evidence for petitioner's convictions. The State contends that claims one, two, four, and seven fail to warrant relief under § 2254(d), and claims three, five, and six should be denied as procedurally barred

### A. Meritless Ineffective Assistance of Counsel Claims

Petitioner presented claims one, two, four and seven to the Delaware Supreme Court on post-conviction appeal, which denied the claims as meritless. Therefore, petitioner will only be entitled to habeas relief for these four claims if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510

(2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware Supreme Court correctly identified the *Strickland* standard applicable to petitioner's ineffective assistance of counsel claims. Thus, the Delaware Supreme Court's decision was not contrary to *Strickland*. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court must also determine if the Delaware Supreme Court reasonably applied *Strickland* in denying claims one, two, four, and seven as meritless. When

9

performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens. *Harrington*, 131 S.Ct. at 788. In other words, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 1. Claim one: counsel failed to challenge the first degree murder charge in the indictment

In his first claim, petitioner contends that counsel should have argued that the State charged him with, and prosecuted him for, the wrong degree of homicide, as evidenced by the Delaware Supreme Court reducing his conviction for felony murder to manslaughter. According to petitioner, if counsel had argued prior to trial that charging him with felony murder was improper, the "trial court would have been lawfully required to amend [his] indicted felony murder charge (count 1) down to manslaughter, and [petitioner] would have been properly tried before the jury on the correct degree of homicide." (D.I. 3 at 18) Petitioner also asserts that, if he had been "correctly charged he could have utilized his statutory rights to negotiate a favorable plea bargain to [the] reduced charge of criminally negligent homicide or have had other charges nolle prossed for a significantly reduced sentence." (D.I. 3 at 18-19) Petitioner's argument is based on his belief that manslaughter was the highest degree of homicide that he could have been lawfully charged with. (D.I. at 18)

This argument is unavailing. On direct appeal, the Delaware Supreme Court reversed petitioner's felony murder conviction because of an improper jury instruction, not because of any error with the original felony murder charge in the indictment. In

fact, the Delaware Supreme Court held that petitioner could be retried on the felony

murder charge or the State could elect to accept an entry of a judgment of conviction of

manslaughter. See Comer, 977 A.2d at 343.

In turn, the Delaware Supreme Court rejected petitioner's instant argument on

post-conviction appeal, holding that:

> [Petitioner's] counsel vigorously challenged the murder conviction in a motion for
> judgment of acquittal as well as on direct appeal, which resulted in this Court's
> reversal of the conviction. Moreover, **there was no basis for challenging the
> original charge of first degree murder**. The charge was proper and the
> evidence presented at trial supported [petitioner's] conviction of that charge. The
> conviction was reversed not because there was insufficient evidence to support
> it, but because the jury instruction on that charge was deficient.

Comer, 2011 WL 2361672, at *2 (emphasis added).

After reviewing petitioner's instant argument in context with the record, the court

concludes that the Delaware Supreme Court reasonably applied Strickland in denying

claim one. The fact that petitioner's felony murder conviction was reversed due to an

erroneous jury instruction does not demonstrate that the indictment's felony murder

charge was defective. In addition, defense counsel vigorously challenged the felony

murder conviction in motions for dismissal and for judgment of acquittal, as well as on

direct appeal, and the appellate challenge actually resulted in the reversal of the felony

murder conviction. And finally, petitioner's contention that he would have been able to

negotiate a plea agreement to a reduced charge of negligent homicide if counsel had

successfully challenged the original charge of felony murder and had it decreased to

manslaughter prior to trial is too speculative to establish prejudice. Accordingly, the

court will deny claim one as meritless.

11

## 2. Claim two: counsel failed to move for judgment of acquittal on the attempted first degree murder charge/attempted first degree assault conviction

Next, petitioner contends that counsel was ineffective for failing to move for a judgment of acquittal with respect to his conviction for the attempted first degree assault of Johnson, because the State's evidence for his first degree felony murder of Mitchell only established that he acted recklessly. The Superior Court denied this argument when presented in petitioner's Rule 61 proceeding, because recklessness was not an element of the crime against Johnson, the victim of the attempted first degree assault conviction. The Superior Court explained, "a jury could have found that when [petitioner] voluntarily shot at Johnson, [he] had the criminal mind sets (intent as to Johnson, and recklessness as to innocent bystanders) []." *Comer*, 2010 WL 3511024, at *2. On post-conviction appeal, the Delaware Supreme Court affirmed that decision, holding that "there was no basis for a challenge to the sufficiency of the evidence on the assault charge." *Comer*, 2011 WL 2361673, at *3.

After reviewing the record, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying claim two. Petitioner's instant argument is premised on his erroneous presumption that the State must proceed under the same state of mind for every count of the indictment and every victim. However, in Delaware, a single act or transaction involving a crime of violence against different persons can result in separate charges. *See Glover v. State*, 710 A.2d 217 (Del. 1998). In this case, there were two separate victims of two crimes: Johnson, the person petitioner intended to kill; and Mitchell, the innocent bystander, who was killed by petitioner's reckless

gunfire. Notably, when the trial court denied petitioner's motion for judgment of acquittal with respect to his felony murder conviction, it acknowledged that one act could involve two different intents for two different victims by stating, "the jury could easily have harmonized the evidence and accepted the State's argument that [petitioner] was shooting at Johnson when Mitchell was killed." *State v. Comer*, 2007 WL 3133574, at *2 (Del. Super. Ct. Feb. 2, 2007).

It is well-settled that an attorney's failure to raise meritless arguments does not amount to constitutionally ineffective assistance. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Given the foregoing discussion, petitioner cannot establish a reasonable probability that a motion for judgment of acquittal premised on his instant argument would have been successful. Therefore, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying claim two.

### 3. Claim four: counsel failed to challenge the sufficiency of the evidence for the felony murder conviction

In claim four, petitioner argues that counsel was ineffective for failing to get the felony murder charge in the indictment dismissed prior to trial on the basis that there was no probable cause. The court rejects this argument. The Delaware Supreme Court reversed petitioner's felony murder conviction because of an improper jury instruction, not because there was insufficient evidence to support that conviction. In fact, on post-conviction appeal, the Delaware Supreme Court held that there was no basis for challenging the original charge of felony murder, because "the charge was proper and the evidence presented at trial supported [petitioner's] conviction of that charge." *Comer*, 2011 WL 2361673, at *2. Considering that there was sufficient

13

evidence to support petitioner's conviction for felony murder under the reasonable doubt standard, there is no reason to question the existence of probable cause for including that charge in the indictment in the first place. As such, any challenge to the indictment itself on this basis would have been fruitless. Thus, the court concludes that claim four does not warrant relief.

### 4. Claim seven: counsel failed to argue insufficient evidence that petitioner reloaded his weapon

In claim seven, petitioner alleges that defense counsel was ineffective for failing to explicitly argue that petitioner could not have shot Mitchell because there was no evidence that petitioner reloaded his gun while chasing Johnson's car. According to petitioner if, as argued by the State, petitioner was the only person still shooting a weapon at Fifth Street when Mitchell was shot by a ricochet bullet, petitioner would have fired his gun a total of thirty times. The gun could only have been fired thirty times if it was reloaded five times. If petitioner reloaded the gun, there would have been spent shell casings on the ground, but no casings were entered into evidence. Petitioner views the lack of casings as evidence that he did not fire the shot that killed Mitchell.

Petitioner presented this same ineffective assistance of counsel argument regarding the lack of spent shell casings in the Rule 61 motion he presented to the Superior Court. The Superior Court denied this "no reload evidence/ineffective assistance of counsel" argument, because the "[n]o reload [evidence]" [theory], in effect, was argued by trial and appellate counsel." *Comer*, 2010 WL 3511024, at *2. On post-conviction appeal, the Delaware Supreme Court affirmed the Superior Court's decision, stating that it had "previously ruled on direct appeal that there was sufficient evidence

14

presented at trial to support the charge of manslaughter as a lesser-included offense of murder in the first degree [felony murder]." *Comer*, 2011 WL 2361673, at *3.

The court concludes that claim seven does not warrant relief, because petitioner's "no reload evidence" theory is inconsistent with the evidence presented at trial. For instance, the evidence introduced during the trial established that: eleven or more shots were fired from two semi-automatic handguns and one revolver; the shot that killed Mitchell came from a revolver; the spent shell casings from the semi-automatic handguns were not found on 5th Street in the area where Mitchell was shot; and an eye witness testified that petitioner was the only person shooting a gun while running down Fifth Street toward the location where Mitchell was shot.[3] (D.I. 17, State's Ans. Br. in *Comer v. State*, No.281,2008D, at 17-18) In turn, as explained by the State on direct appeal, revolvers, unlike automatic weapons, do not eject cartridge casings. (D.I. 17, State's Ans. Br. in *Comer v. State*, No.281,2008D, at 17-18, n. 10) Defense counsel could reasonably have concluded that, after viewing this evidence in a light most favorable to the State, the jury would reject the "no reload evidence" theory and,

---

[3]In its appellate brief, the State summarized the evidence as follows:

> Ten cartridge casings were found at the intersection of Monroe and Fifth Streets. Examination revealed that these had been fired from two different semi-automatic handguns. No cartridge casings were found on Fifth Street, indicating that whoever was firing the two semi-automatic handguns went no further than the intersection. The ballistics expert also examined the bullet that killed Bakeem Mitchell and testified that it appeared to have been fired from a revolver. This testimony indicated that three guns were involved, one per defendant. Two were semi-automatics that were not fired beyond the intersection of Monroe and Fifth Streets. Shai Douglas saw only [petitioner] running up Fifth toward Madison, firing as he went. The bullet that killed Mitchell most likely was fired by a revolver.

(D.I. 17, State's Ans. Br. in *Comer v. State*, No.281,2008D, at 17-18)

instead, find that there were no spent shell casings because petitioner was using a revolver and not a semi-automatic gun.

Accordingly, the court will deny claim seven, because counsel's alleged failure to highlight the ballistics evidence in the manner petitioner wanted did not constitute ineffective assistance under *Strickland*.

## B. Procedurally Barred Ineffective Assistance of Counsel Claims

In claim three, petitioner contends that counsel should have objected to the trial court's supplemental jury instruction. In claim five, he asserts that counsel failed to conduct a direct examination of witness Chaquan McCoy. In claim six, petitioner asserts that counsel should have challenged the trial court's denial of petitioner's motion for judgment of acquittal. The record reveals that petitioner did not present any of these three claims to the Delaware Supreme Court on post-conviction appeal. At this juncture, Delaware Superior Court Criminal Rules 61(i)(1), (2) and (4) would bar petitioner from presenting these issues to the Delaware state courts in a new Rule 61 motion in order to have an opportunity to appeal any adverse decision to the Delaware Supreme Court. *See Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding); *White v. Carroll*, 416 F. Supp. 2d 270, 281 (D. Del. 2006)(Rule 61(i)(4) prohibits reconsideration of a formerly adjudicated ground). Consequently, claims three, five, and six are procedurally defaulted, meaning that the court cannot review their merits absent a showing of cause and prejudice, or that petitioner is actually innocent.

16

Petitioner appears to argue that his default should be excused pursuant to *Martinez v. Ryan,* 132 S.Ct. 1309 (2012), because the Superior Court failed to appoint counsel to represent him during his Rule 61 proceeding. (D.I. 18) This argument is unavailing. In *Martinez,* the Supreme Court held that a state court's failure to appoint counsel during the initial-review collateral proceeding may establish cause sufficient to excuse the procedural default of a claim of ineffective assistance of trial counsel, so long as the underlying ineffective assistance of trial counsel claim is substantial. *Id.* at 1316, 1320. A "substantial" ineffective assistance of trial counsel claim is one that has "some" merit," *Id.* at 1318 -19, which is "analogous to the substantiality requirement for a certificate of appealability." *Cox v. Horn,* 757 F.3d 113, 119 (3d Cir. 2014). However, the *Martinez* Court explicitly limited its rule, stating that the "holding in this case does not concern errors in other kinds of proceedings, **including appeals from initial-review collateral proceedings**. " *Martinez,* 132 S.Ct. at 1320. (emphasis added). The Supreme Court explained that, "[w]hile counsel's errors in these [other kinds of] proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding." *Id.* at 1317.

The procedural default of claims three, five, and six in this case occurred because petitioner did not include these three claims on post-conviction appeal. However, petitioner did, in fact, present the instant three claims in his "initial-review collateral proceeding" by including them in his Rule 61 motion. Therefore, the *Martinez* rule is inapplicable, and the Superior Court's failure to appoint counsel to represent

17

petitioner in his initial Rule 61 proceeding does not provide cause to excuse the default of these claims.[4]

Given petitioner's failure to demonstrate cause, the court need not discuss the issue of prejudice. Nevertheless, the court concludes that petitioner has failed to establish prejudice sufficient to excuse his procedural default because he has not shown that any of the errors alleged in the instant three claims amounted to constitutional errors. For instance, in claim three, petitioner asserts that counsel should have objected to the trial court's supplemental instruction because it failed to instruct the jury that it could not consider evidence of his reckless behavior when determining whether he was guilty of attempted first degree assault (a lesser included offense of attempted first degree murder).[5] (D.I. 3 at 8, 23) Petitioner appears to believe that he could only have been convicted of reckless endangerment with respect to Johnson, since his reckless act of engaging in a gun fight did not cause physical injury to

---

[4]Even if the *Martinez* rule should be liberally interpreted as applying to a pro se petitioner's decision to omit on post-conviction appeal some of the ineffective assistance of counsel claims the petitioner presented in his initial Rule 61 motion, the court would still not excuse petitioner's default because he has failed to demonstrate that these claims are substantial. In claims three, five, and six, petitioner merely restates the arguments he presented in his Rule 61 motion without providing anything to demonstrate that these three allegations have some merit. When petitioner's instant allegations are viewed in context with the Superior Court's explanation as to why it found the three ineffective assistance of counsel claims to be meritless, the court cannot conclude that they have "some merit." Moreover, petitioner has not provided anything to rebut the presumption that he made a reasonable strategic decision not to pursue these allegations on post-conviction appeal after reviewing the Superior Court's explanation for its denial of claims three, five, and six.

[5]The background to claim three is as follows. During its deliberations, the jury sent a note to the court asking whether the court's prior instruction regarding recklessness also applied to the count charging petitioner with the attempted murder of Johnson. With the agreement of counsel, the jury was specifically instructed that the prior recklessness instruction did not apply and the trial court reiterated that count three, attempted murder, required an intentional state of mind. (D.I. 15 at 7-8)

18

Johnson. (D.I. 3 at 23) The court rejects this argument, because it is premised on petitioner's "false notion that the evidence merely tended to show recklessness" on his part. *Comer*, 2010 WL 3511024, at *2. As explained by the Superior Court when it denied petitioner's Rule 61 motion, "there is no rule [] that two theories cannot be charged for the same incident – [that he] had to act intentionally or recklessly." *Id.* Consequently, "although there was one voluntary act, there were two victims, two criminal sets and, therefore, two crimes," and "a jury could have found that when he voluntarily shot at Johnson, [petitioner] had the criminal mind sets [--] intent [to injure or kill] as to Johnson, and recklessness as to innocent bystanders []." *Id.*

The relevant portion of the supplemental instruction given by the trial court provided:

Count III alleges an intentional crime. Therefore, as you consider whether any defendant is guilty or not guilty of the attempted murder or the lesser included attempted assault alleged in Count III, you must focus on each defendant's individual actual state of mind.

(D.I 3 at 50) Because the supplemental instruction properly instructed the jury that both the attempted first degree murder charge and the lesser included attempted first degree assault charge required a finding of intent, petitioner cannot demonstrate that he was prejudiced by counsel's failure to raise an objection to that instruction.

In claim five, petitioner contends that defense counsel erred by failing to conduct a direct examination of Chaquan McCoy, because McCoy would have supported the defense theory that Mitchell was shot by Johnson in a drive-by shooting. The record reveals that petitioner's co-defendant Williams called McCoy as a witness, and defense counsel (along with the attorneys representing petitioner's other co-defendant)

conducted direct and redirect examination of McCoy. *See Comer*, 2010 WL 3511024, at \*3. Consequently, petitioner cannot establish that he was prejudiced as a result of his default of this claim.

Finally, in claim six, petitioner contends that counsel was ineffective for failing to challenge the trial court's denial of his motion for judgment of acquittal with respect to the felony murder conviction. However, defense counsel did challenge the trial court's denial of the motion for judgment of acquittal on direct appeal, and the Delaware Supreme Court affirmed the trial court's denial of the motion after finding sufficient evidence to support petitioner's felony murder conviction under an agency theory. *See Comer*, 977 A.2d at 344. In addition, as a result of defense counsel's appellate challenge, petitioner's felony murder conviction was reduced to manslaughter. *Id.* For these reasons, petitioner cannot demonstrate that he was prejudiced by his default of this claim.

The court also concludes that the miscarriage of justice exception to the procedural default doctrine cannot excuse petitioner's default of these three claims, because movant has failed to provide new reliable evidence of his actual innocence.

Accordingly, the court will deny claims three, five, and six as procedurally barred from federal habeas review.

## V. CERTIFICATE OF APPEALABILITY

Having decided to deny the instant application, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability may only issue when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when

20

the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For the foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254. An appropriate order will be entered.